[No. 2817. Decided February 25, 1898.]

THE STATE OF WASHINGTON, *on the Relation of A. A. Denny*, v. ROBERT BRIDGES *et al.*, *as the Harbor Line Commission of the State of Washington*, AND CITY OF SEATTLE, *Intervenor.*

TIDE LANDS — LEASE FOR PURPOSES OF NAVIGATION AND COMMERCE — CONSTRUCTION OF CONSTITUTIONAL PROVISIONS.

Under art. 15, § 1, of the constitution, forbidding the sale of harbor areas and providing that they "shall be forever reserved for landings, wharves, streets and other conveniences of navigation and commerce," the term "commerce" must be construed as modified by the employment of the term "navigation," and the commercial use of such areas must be restricted to such as are aids to navigation; consequently the erection of structures on such areas for the "curing and canning of fish, maintaining a retail and wholesale fish market and the storage of ice for packing and handling fish," are not "conveniences of navigation and commerce," and hence not permissible under the constitution.

Under art. 15, §2, of the constitution, authorizing the legislature to "provide general laws for the leasing of the right to build and maintain wharves, docks and other structures upon the areas mentioned in section one" of said article, the term "other structures" is governed by the rule of *ejusdem generis*, and falls within the *genus* "conveniences of navigation and commerce," and the statute (Laws 1897, p. 255, sec. 53; Bal. Code, sec. 2183), passed in pursuance thereof does not contemplate leases for any other purpose.

*Original Application for Mandamus.*

*Blaine & DeVries*, for petitioner.

*Patrick Henry Winston*, Attorney General, *Thomas M. Vance*, Assistant Attorney General, *John K. Brown*, and *F. B. Tipton*, for respondent.

The opinion of the court was delivered by

REAVIS, J.—Plaintiff applied to the board of state land commissioners to lease from the state the harbor area in front of certain tide lands of the city of Seattle owned by him. The uses for which he sought to lease the harbor area were as follows:

" For the purpose of receiving by rail and water, shipping by rail and water, fish and other food products of the water, curing and canning cod, salmon and other fish and water products; of keeping and maintaining a retail and wholesale fish market for the handling of shell and other fish from the waters of the Pacific Ocean, Alaska and the inlets, bays and arms of the Pacific Ocean, and the lakes and rivers of Oregon, Washington, British Columbia and Alaska; and in the handling of fresh, salt, cured and canned fish in and between the city of Seattle and the markets in the state of Washington and other states and foreign countries; and for the manufacture or storage of ice to be used in the packing and handling of fish and other food products of the water, and the furnishing ice to the steamers and other craft touching at said city of Seattle, and to the towns and places upon Puget Sound and tributary country."

The board of harbor line commissioners rejected the application of plaintiff to lease on two grounds:

"First—That the plaintiff, A. A. Denny, must adjust or acquiesce in the adjustment of tide lands purchased by him as aforesaid to the new plat thereof, before any lease will be granted him for the harbor area aforesaid, or any part thereof. Second—That the use for which the plaintiff, A. A. Denny, desires to lease said harbor area is not a convenience of commerce or navigation, and the structure which, according to said application, he contemplates placing on said harbor area is not a wharf, dock or other structure, within the meaning of the constitution and tide land laws of the state of Washington."

In the view of this cause taken by the court, it is not

necessary to discuss the first ground of the rejection of the application to lease by the board of harbor line commissioners. Article 15, § 1, of the constitution of the state, relating to tide lands, among other things declares:

"Nor shall any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets and other conveniences of navigation and commerce."

As asserted by counsel for plaintiff, the word "commerce" is one of wide significance, and in its general sense may mean almost any transaction or intercourse between men. But the word has been restricted by the courts according to the context in which the term has been used. Section 2 of article 15 of the constitution of the state declares:

" The legislature shall provide general laws for the leasing of the right to build and maintain wharves, docks and other structures, upon the areas mentioned in section one of this article, but no lease shall be made for any term longer than thirty years, or the legislature may provide by general laws for the building and maintaining upon such area wharves, docks and other structures."

Counsel for plaintiff contend, that the words "navigation and commerce" do not appear in the second section, and that the phrase "and other conveniences of navigation and commerce" appears in the first section; that the second section provides for laws for the leasing of the right to build and maintain wharves, docks and other structures, and that the purpose for which these "other structures" are to be used, or their nature, is not defined; and also argue that navigation and commerce mean one and the same thing, and that commerce includes navigation, and that the word

"commerce" here is used in its broadest import; that the words "navigation and commerce" are words of enumeration, and not those of definition; and that the court is called upon to define their meaning, and such definition should properly be made from a consideration of the people and their wants at the time the constitution was adopted. It is also argued that the reservation of harbor areas is a very broad one, and a comparison is made between the harbor area in front of the city of Seattle and that of other noted emporiums of the world. The contention that "navigation" is included within "commerce," and means the same thing, cannot be maintained. The word "navigation," as used in the first section of the article of the constitution quoted, is clearly used as a qualification of the word "commerce," and the provisions for maintaining upon the harbor area wharves, docks and other structures, by or through the state, refers to structures which are conveniences of navigation and commerce. We think the language as well as the sense of these two sections of the constitution is plain, and the ordinary rules of statutory and constitutional construction fit this sense. It is plainly said in § 2 that the wharves, docks and other structures are those mentioned in § 1. Then the rule of *ejusdem generis* is plainly applicable here, and "other structures" must fall within the genus "conveniences of navigation and commerce." Our constitution, in its provisions relating to harbor areas in front of cities, is unlike that of any other state constitution that has been submitted to our attention. Therefore it would probably be useless to attempt to find authority to aid in the construction of our constitution. The state of Washington at its formation had before it the experience of the world in the regulation and control of harbor areas. The constitutional convention well knew that private control of these waters had always been inimical to free navi-

gation and to the public interests. The insidious and plausible pretexts for the establishment of private interests in such waters were also well understood, and, however large the harbor areas within the domain of the state, it was well known, from the history of the past and the tendencies of the present, that the organization of private interests in combination would be sufficiently powerful to pervade all these waters. A very fair comment upon the import of these constitutional provisions is found in the Report of the Massachusetts State Board on Docks and Terminal Facilities (1897), p. 37, in which it is said:

" Alive to modern tendencies, the state of Washington, in her constitution, article 15, declares that no water areas beyond high water marks shall be sold or relinquished by the state, 'but such areas shall be forever reserved for landings, wharves and streets, and other conveniences of navigation and commerce.' Subsequently a harbor line commission established harbor lines in the navigable tide waters of the state adjacent to the cities, with a view to providing for docks having a length of 600 feet and an avenue fronting thereon of from 100 to 250 feet wide. Thus the water front of all the cities in the state is to be forever preserved in uniform condition, under control of the public, in the interest of economical and convenient commercial uses, secure from the encroachment of individuals or corporations."

" Curing and canning fish, maintaining a retail and wholesale fish market, and the storage of ice for packing and handling fish," are not conveniences of "navigation and commerce," and maintaining establishments of that character and structures erected for such purposes are not the "other structures" mentioned in the constitution relating to this subject. The act of the legislature (Laws 1897, p. 229, § 53, Bal. Code, § 2183), does not contemplate a lease for any other purposes than those specified in the constitution. The act specially reserves to the state of Wash-

ington "the right to regulate, either under rules of the commission or legislative enactment, or by both methods, the rates of wharfage, dockage and other tolls to be imposed by the lessee upon commerce for any of the purposes," etc.

The writ is denied.

DUNBAR, ANDERS and GORDON, JJ., concur.