HORTON, Chief Judge.
Central and Southern Florida Flood Control District, defendant below, has appealed from a final decree permanently enjoining it from erecting a salt water control dam in the Biscayne Canal located on the Miami Shores golf course. The effect of the District’s proposed action would be to obstruct navigation upon waters of the canal. The record discloses that Biscayne Canal is a navigable water course originally constructed by Dade County, which flows in an easterly and southeasterly direction from Red Road through Miami Shores golf course, into Biscayne Bay. The District had. acquired land at a site on the golf course for the purpose of constructing the salt water intrusion dam in question.
Appellees, plaintiffs below, own a lot contiguous to the Biscayne Canal but upstream from the golf course. They contend that the construction of the proposed dam at the site on the golf course will deprive them of access to their property by boat for purposes of trips to and from Biscayne Bay and adjacent waters.
Although the appellant has raised several points upon which it relies for reversal, we conclude that the determinative point is whether or not the appellees are proper parties to maintain this action. In considering that question, it is necessary to determine whether or not any property or property right of appellees will be taken or impaired by the construction of the proposed dam.
All the property necessary for the dam site was acquired in a condemnation proceedings from the Village of Miami Shores. Appellees admittedly have no interest in or lien upon the Miami Shores property .which was the subject of the condemnation but bottom their right upon a grant made by a predecessor in title to Dade County. This grant to Dade County was contained in a written instrument which provided that the county construct a canal across certain property owned by the grantor, with the perpetual right in the grantor to use the canal “for all proper or legal purposes without obstruction or hinderance” by or from the county and without “interference with its free use for all proper purposes by other persons owning land in the territory known as Biscayne Drainage District.” Subsequent to appellees’ acquisition of their property, they received a quitclaim deed to the area lying between their property and the canal as well as riparian rights, if *425 any, in said canal. Nowhere does it appear that appellees own the bed of the canal or any part thereof. However, ap-pellees insist that the canal fronting their property is a private canal and by virtue of the instrument or conveyance to Dade County, they have a special property right in the canal as well as its use.
The chancellor found that the canal was a private navigable waterway owned by •appellees and others with similar rights to use.
We are unable to find any basis in the record for the chancellor’s findings. It is true the canal was constructed and is maintained upon land, the fee title of which vests in another. Nevertheless, it was constructed and is maintained by virtue of the easement or conveyance from appellees’ predecessor in title as a public waterway. The appellees at most have riparian rights given them under the quitclaim deed subsequent to their original purchase, but nowhere does it appear that they have a property right in the bed of the canal or a vested right in the unobstructed use of the waters as a highway to connect them with adjacent waters. We are therefore faced with the identical principle presented and decided by this court in the case of Carmazi v. Board of County Commissioners, Fla.App.1959, 108 So.2d 318 — whether or not a right of navigation which the property owner now enjoys is a property right within the purview of the constitutional protection. As in that case, the appellees here are riparian owners who contend that their right of navigation is being jeopardized. In the Carmazi case, supra, this court said (at page 322):
“On the other hand, a .right of navigation is a right common to the public in general. Riparian owners acquire no additional rights to navigation other than those shared concurrently with the public. Silver Springs Paradise Co. v. Ray, 5 Cir., 50 F.2d 356; Thiesen v. Gulf, F. & A. Ry. Co. [75 Fla. 28, 78 So. 491, L.R.A.1918E, 718] and Ferry Pass Inspectors’ & Shippers’ Ass’n, v. White River Inspectors’ & Shippers’ Ass’n, [57 Fla. 399, 48 So. 643, 22 L.R.A.,N.S., 345]. See also Frost v. Washington County R. Co., 96 Me. 76, 51 A. 806, 59 L.R.A. 68; Farnham, Water and Water Rights, Vol. I, § 29. In the instant case, the appellants are complaining of the fact that once access is had to the water adjacent their property, they cannot navigate to Biscayne Bay. This amounts to a deprivation of a ¡right of navigation which will affect the public as a whole. The eminent domain statutes protect only private rights; not rights which accrue to the public as a whole. See § 73.01, Fla. Stat, F.S.A. In Thiesen v. Gulf, F. & A. Ry. Co., supra, [75 Fla. 28, 78 So. 501] the Supreme Court of Florida said:
“ ‘In so far as the declaration alleges the right of ingress and egress to and from the lot over the waters of the bay, its states a common-law right appertaining to riparian proprietorship. The common-law riparian proprietor enjoys this right, and that of unobstructed view over the waters, and in common with the public the right of navigating, bathing, and fishing * * *.’
“The above quoted section recognizes the right of the riparian landowner to navigate, bathe and fish in the bay, and observes that this right is held in common with the public.” [Emphasis in opinion cited.]
We are unable to distinguish the present case from the Carmazi case and therefore conclude that the appellees have not shown any loss of property or the impairment of a property right. This is not to say that if, upon a construction of the proposed dam the appellees’ property, abutting on the canal, should become flooded or otherwise suffer a special injury in the use and enjoyment by appellees of their riparian lands, they would not have re-' course against those who occasioned such *426 special damages or such appropriate relief depending upon the circumstances and nature of the injury.
Therefore, the decree appealed is reversed and the cause is remanded with directions to dismiss the complaint.
Reversed and remanded with directions.
PEARSON and CARROLL, CHAS., JJ., concur.